[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12987

_____

D.C. Docket No. 2:03-cr-14068-DLG-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSEPH POIGNANT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 28, 2019)

Before MARCUS, GRANT and HULL, Circuit Judges.

HULL, Circuit Judge:

Defendant Joseph Poignant appeals the revocation of his supervised release,

pursuant to 18 U.S.C. § 3583(e).  On appeal, Poignant argues that the district court

had insufficient evidence that he failed "to participate" in a sex offender treatment program and thereby abused its discretion in revoking his supervised release. After review and with the benefit of oral argument, we affirm. There was sufficient evidence to support the district court's findings that in several ways Poignant had failed to participate in his sex offender treatment program and Poignant has shown no clear error in the district court's findings. Further, given our deferential review, we cannot say that the district court abused its discretion in revoking Poignant's supervised release.

## I.  BACKGROUND

### A.    Conviction and Supervised Release

In 2003, a federal grand jury indicted Poignant with one count of using a computer to persuade, induce, entice, and coerce a minor to engage in sexual activity, and attempting to do so, in violation of 18 U.S.C. § 2422(b). In 2004, Poignant pled guilty pursuant to a written plea agreement.

The district court sentenced Poignant to 60 months' imprisonment, followed by 10 years of supervised release. The district court imposed the standard conditions of supervision, as well as the special conditions that Poignant: (1) not possess or use a computer that contains an internal modem and/or possess an external modem without the prior approval of his probation officer, (2) participate in a sex offender treatment program to include psychological testing and polygraph

examination, and (3) not possess or produce visual depictions of minors or adults engaged in sexually explicit conduct.

Poignant filed a direct appeal but he subsequently moved to dismiss his appeal with prejudice, which this Court granted.

**B.     Prior Revocations of Supervised Release**

Poignant's first term of supervised release began in 2008.  In 2011, Poignant's supervised release was revoked because (1) he possessed or used a computer with internet access, as he and his wife had accessed "swinger dating sites" via the internet and had sent their photos to other couples on the sites, and (2) he was discharged from his sex offender treatment program for not reporting this activity.

In the first revocation order, the district court sentenced Poignant to seven months' imprisonment, followed by seven years of supervised release.  The district court ordered that all provisions of Poignant's original judgment remain in full force and effect.  Poignant did not appeal this first revocation order, and Poignant was later released from prison.

Again in 2016, Poignant's supervised release was revoked because (1) he possessed an unauthorized tablet computer with internet access, (2) he used his cell phone to produce visual depictions of adults engaged in sexually explicit conduct, and (3) he failed to answer truthfully all inquiries by his probation officer.

3

In this second revocation order, the district court sentenced Poignant to 8 months' imprisonment and 20 years of supervised release. The district court ordered that all special conditions of supervised release imposed on Poignant in 2004 and 2011 remain in full force and effect. Poignant appealed the district court's second revocation of his supervised release, arguing that the district court abused its discretion in imposing the condition that he refrain from viewing, possessing, or producing visual depictions of adults engaged in sexually explicit conduct. This Court affirmed.

## C.     Instant Petition for Revocation

Poignant's supervised release commenced in September 2016. In April 2018, Poignant's probation officer filed the instant petition for revocation of supervised release. The petition, executed on April 25, 2018, alleged that Poignant had violated a special condition of his supervised release by "failing to participate in a sex offender treatment program." The petition expressly stated that (1) on or about April 23, 2018, Poignant was unsuccessfully discharged from the sex offender treatment program he had been attending, and (2) that the discharge was "evidenced by the letter of unsuccessful discharge from treatment dated April 23, 2018."

**D.    Magistrate Judge's Evidentiary Hearing**

Because Defendant Poignant challenges the sufficiency of the evidence to revoke his supervised release, we detail what happened at the evidentiary hearing before the magistrate judge.

Dr. Holly Goller, Poignant's therapist for his sex offender treatment program, testified about Poignant's treatment and behavior. Dr. Goller works at the Clinical and Forensic Institute as a licensed psychologist for the Responsibility, Effort, Awareness, Self-Criticism, and Honesty ("REACH") program. In September 2016, Dr. Goller became Poignant's full-time therapist and saw him twice a week for group therapy and twice a month for individual sessions. As part of her individualized therapy, Dr. Goller and her clients created treatment goals at the beginning of each year. Poignant's treatment goals focused on addressing his urge control, anger management, and cognitive distortion issues, and managing his risk factors to prevent him from engaging in his offense cycle.

Poignant was also placed in more restrictive and intensive therapy involving an "Intensive Therapy Program" ("ITP") contract. Poignant's updated ITP contract in May 2017 included that he would attend two group sessions every week, attend two individual sessions every month, present exercises or assignments at group sessions each week, avoid beaches and bars, avoid the internet and adult and child pornography, and avoid swing clubs, nightclubs, adult

theaters, and places that sell pornography or lingerie.  Poignant also agreed to manage his anger during group sessions by employing a three-part strategy to calm down when he felt overwhelmed or angry.

At a group therapy session on April 16, 2018, Poignant became angry after another group member had finished presenting.  Specifically, Poignant raised his hand and told the group that he wanted to give his presentation, but was frustrated because there was not enough time for him to present.  Dr. Goller told Poignant that there was enough time for him to present what he wanted, but Poignant escalated.  Poignant's tone increased, his speech rate quickened, his face reddened, his stare intensified, and he did not respond to re-direction.  Dr. Goller and the other group members asked Poignant why he was becoming angry, and they attempted to utilize the three-step strategy to calm him down.  Poignant then said that he did not have a presentation ready and continued to escalate.

When Poignant failed to respond to Dr. Goller and use his anger management skills, Dr. Goller determined that it was counter-therapeutic for Poignant to remain in the group session and asked him to leave.  Dr. Goller estimated that she tried to implement the three-step strategy for over 10 to 15 minutes.  As Poignant was leaving, he said "this is fucking bullshit" and mumbled, "fuck this."  Dr. Goller stated that she felt that Poignant was verbally aggressive toward her when he used swear words.

6

Dr. Goller testified that program participants were instructed both in the program handbook and at orientation that they were not to be disrespectful and that they may be asked to leave if they could not control their anger. Participants were also told that a violation of their ITP contracts could result in them being discharged from the program. Additionally, participants were instructed not to loiter on the property after their therapy sessions ended. After being asked to leave the session, Poignant did not leave, but stayed in his car and called his probation officer. Dr. Goller approached his car and asked him to leave. Poignant ignored her at first, but left after she told him that she would call the police if he did not leave. Poignant typically attended the following group therapy session after the first session ended but he was not allowed to attend the second session that day due to his behavior.

Dr. Goller was aware that April 2018 was the second anniversary of Poignant's mother's suicide, but Poignant did not mention it when she asked him why he was angry and escalating during the group session.

Dr. Goller testified that the decision to discharge Poignant from the treatment program was based on his behavior up until that point, not just his outburst on the day he was asked to leave the group session. Dr. Goller stated that Poignant's discharge was based on him continuously engaging in risky behaviors,

7

putting himself in risky situations, potentially starting to engage in his offense cycle, and not responding to re-direction and ignoring the program's rules.

Specifically, Dr. Goller testified Poignant had been showing poor decision-making abilities and had started to engage in his offense cycle by placing himself in risky environments that gave him access to individuals that he identified as his desired victims. Poignant had told his probation officer that he was in compliance with his ITP contract, but told Dr. Goller that he had been taking rides along the beach in violation of his ITP contract.

A session between Dr. Goller, Poignant, and his probation officer in January 2018 revealed that Poignant told different stories to them concerning a computer that his girlfriend left at his house overnight. Poignant told Dr. Goller that his girlfriend left the computer, but he did not know the password and never had access to it. Poignant told his probation officer that he knew her password because he helped her set up a hotspot. He did not disclose whether he had used that computer to view pornography.

After Poignant was asked to leave the April 16 group session, he was administered a polygraph examination on April 22, 2018. His polygraph showed deception when he was asked whether he had viewed any pornographic pictures or videos since his last polygraph. Dr. Goller noted that Poignant had shown

8

deception on previous polygraphs, but he had not shown deception relating to having illegal contact with minors or any other illegal activity.

Dr. Goller testified that Poignant was not participating in the program because of (1) his failure to answer truthfully to his probation officer and to Dr. Goller, including about his use of or access to his girlfriend's computer, (2) his inability to change his behavior and stay out of settings that triggered offense conduct, and (3) his failure to follow the three-pronged strategy for anger management.[1]

Poignant did not testify at the evidentiary hearing. After hearing argument, the magistrate judge took the matter under advisement.

## E.    Magistrate Judge's Report

After the evidentiary hearing, the magistrate judge issued an eight-page report and recommendation ("Report") recommending that the district court find that Poignant failed to participate in his sex offender treatment program and, thus, violated a condition of his supervised release. In the Report, the magistrate judge first noted that Poignant knew that failing to follow the requirements of the sex

---

[1]At the evidentiary hearing, defense counsel argued that Poignant was being discharged from the program primarily due to his outburst at the group session. Defense counsel stated: "I know he's got a bad history as a probationer and frankly, I believe that's why we're here. I think if he had a clean record, they would not have thrown him out. Maybe they would not have filed a violation. But to violate this man, the way I read that letter, he is being violated mostly for the outburst at group." (emphasis added). However, as noted above, Dr. Goller gave several additional reasons for Poignant's discharge.

offender treatment program could send him back to prison, as he previously violated this condition when he was discharged from the program for failing to be honest about his internet activity. The magistrate judge recognized that Poignant's counsel claimed that Poignant's outburst on April 16, 2018, was explainable because it was the second anniversary of his mother's suicide. However, the magistrate judge found that Poignant's disrespectful conduct on April 16 was not the sole reason he was discharged from the program. Rather, the outburst was the last in a series of problems with Poignant's participation in the program.

In the Report, the magistrate judge also emphasized that Dr. Goller and Poignant's probation officer had discovered that Poignant was untruthful about his internet access, and there were discrepancies about whether Poignant was complying with his ITP contract or going to places that put him at risk of reoffending. The magistrate judge also noted that Poignant had failed a polygraph examination. The magistrate judge recounted how Poignant was advised about the need to be respectful to others and provided a plan for dealing with his anger.

In the Report, the magistrate judge also found that participation meant that Poignant was required to comply with the rules of his sex offender treatment program, which prohibited him from engaging in activities that could lead to relapse, from being untruthful or deceptive to his therapist and others, and from being disrespectful during therapy sessions. Thus, the magistrate judge further

found that Poignant failed to comply with these rules and failed to participate in sex offender treatment. Based on this, the magistrate judge found that the government had met its burden to show by a preponderance of the evidence that Poignant had violated a condition of his supervised release.

## F.    District Court's Final Revocation Hearing

At a final revocation hearing, the district court adopted the Report with a few modifications.[2] The district court stated that it had reviewed the April 23, 2018, discharge letter and would include the letter in the record, but it never did. Nonetheless, the district court read aloud a portion of the April 23 discharge letter, with slight alterations:

> Defendant Poignant was immediately discharged from the [REACH] Program due to his failure to comply with treatment. On September 26th of 2016, he was placed on an [ITP] contract to address his manipulative behavior. Throughout his tenure at the [REACH] Program, the defendant has repeatedly displayed issues with noncompliance, that is poor emotional regulation, becoming verbally aggressive towards the treatment provider, not coming prepared with weekly assignments to mention a few of the items. Additionally, the repeated issues with deception on the polygraph examination, and as I said, most recent being April 22nd of 2018, also demonstrated his problem with inappropriate behavior.

---

[2]The district court corrected errors in Paragraph 7 of the Report which stated that Dr. Goller testified that Poignant began exhibiting deceptive and risky behaviors in January 2017 (but should have said January 2018) and failed a polygraph in April 2017 (but should have said April 2018).

The district court also stated that its review of the magistrate judge's evidentiary hearing clearly showed that Poignant failed to participate in a sex offender program for all of the reasons stated above.

The district court stated that the violation alleged in the petition—failing to participate in a sex offender treatment program—was unclear and the petition should have specified precisely what Poignant did in order to not comply with the program. However, once the court read the discharge letter, it became apparent that Poignant had violated a condition of his supervised release by failing to properly participate in the sex offender treatment program. The district court reiterated that "[i]f this [petition] did not make reference to the discharge letter, then I would agree with [Poignant's counsel's position]; but if you take the [petition] and you look at the letter which is referenced in the [petition], then it became—and frankly, not until then it became apparent to me that the violation was proved by a preponderance of the evidence."

As to Poignant's violation, the district court found that Poignant continued to go to areas that were risky for him, his polygraph results suggested that he was not being truthful, and he blew up at the group session, all of which showed that he was not successfully participating in the program and culminated in his discharge from the program.

The district court told Poignant's counsel that he considered counsel's position very carefully, but in looking at the totality of the case and the discharge letter, the court was satisfied that Poignant violated a condition of his supervised release. The district court sentenced Poignant to 10 months' imprisonment and 20 years of supervised release.

When the government filed its brief in this Court, the government filed a sealed document containing the April 23, 2018, discharge letter and an e-mail exchange between the government and Poignant's trial counsel.

## II. DISCUSSION

As an initial matter, the discharge letter dated April 23, 2018, is not in the record, and while the government filed it here under seal, it has not moved to supplement the record on appeal. See Fed. R. App. P. 10(a) ("The following items constitute the record on appeal: (1) the original papers and exhibits filed in the district court; (2) the transcript of proceedings, if any; and (3) a certified copy of the docket entries prepared by the district clerk."). On appeal, Poignant argues that the discharge letter was not in evidence when the district court relied on it and this Court should not consider the discharge letter as part of the record on appeal.

It is not necessary to supplement the record with the discharge letter, as we can affirm without the discharge letter itself. Although the district court did not include the discharge letter in the record, as it stated it would, the district court did

read a large portion of the discharge letter's contents into the record at the final revocation hearing. At the final revocation hearing, there was no objection to the district court's reading from the discharge letter. Further, Dr. Goller testified at length as to the multiple reasons why Poignant had failed to adhere to his ITP contract and to participate in the sex offender treatment program.

A district court may revoke a defendant's supervised release if the court finds by a preponderance of the evidence that the defendant violated a condition of supervised release. 18 U.S.C. § 3583(e)(3). The preponderance of the evidence standard "simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." United States v. Trainor, 376 F.3d 1325, 1331 (11th Cir. 2004) (internal quotation marks omitted). We review for abuse of discretion a district court's finding that a defendant violated a condition of his supervised release. United States v. Copeland, 20 F.3d 412, 413 (11th Cir. 1994). We are bound by the district court's findings of fact unless they are clearly erroneous. United States v. Almand, 992 F.2d 316, 318 (11th Cir. 1993).

Poignant has not shown any clear error in the district court's findings of fact that in various ways Poignant had failed to participate in a sex offender treatment program. See id. Poignant was discharged from his sex offender treatment program because he failed to comply with several of the program's rules. Although Poignant argues that he did not fail to participate in his sex offender

14

treatment program because he regularly attended therapy sessions, inherent in his participation was his compliance with the program's rules.  Noncompliance with the rules of his sex offender treatment program and with his ITP contract does not constitute participation within the meaning of the condition of his supervised release.

As part of Poignant's sex offender treatment program, he agreed in his ITP contract to avoid risky areas like beaches and bars, avoid adult or child pornography, and employ a three-step strategy to control his anger.  Poignant was warned that failing to follow his ITP contract could result in his discharge from the treatment program.

Despite that warning, Poignant was not truthful with Dr. Goller and his probation officer regarding his compliance with his ITP contract.  Poignant told his probation officer that he was in compliance with his ITP contract, but told Dr. Goller that he had been taking rides along the beach in violation of his ITP contract, which placed him in risky places and situations that could potentially lead him to reoffending.  Poignant also gave differing stories to Dr. Goller and his probation officer about his access to his girlfriend's computer.  Also, Poignant showed deception when he was asked whether he had viewed any adult pornography in his April 2018 polygraph examination.

15

Further, Poignant became angry and disrespectful during a group therapy session on April 16, 2018, when he failed to use his three-part strategy and anger-management skills to calm down, and instead escalated and became verbally aggressive. Although Poignant was not discharged from his sex offender treatment program until after that group session, his behavior at that session was not the sole reason why he was discharged from the program. It should be acknowledged, as it was below, that the group therapy session fell on the second anniversary of Poignant's mother's suicide. However, Poignant's behavior on that day was the last in a series of instances of noncompliance, which resulted in his discharge from the sex offender treatment program. Therefore, because Poignant failed to comply with the rules of his sex offender treatment program, he was discharged from it and he was not participating as required by the district court's judgment.

### III.  CONCLUSION

For the reasons stated, we conclude that: (1) there was sufficient evidence to support the district court's findings that in various ways Defendant Poignant had failed to participate in a sex offender treatment program; (2) Poignant has shown no clear error in the district court's findings; and (3) the district court did not abuse its discretion in revoking Poignant's supervised release.

**AFFIRMED.**